IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MY FAMILY FARM, LLC, and
HACIENDA DEL CAMINO REAL,
LLC,

    Plaintiffs,

v.                                      Civ. No. 22-837 GBW/GJF

BOARD OF COMMISSIONERS OF
DONA ANA COUNTY,

    Defendant.

**ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT**

THIS MATTER comes before the Court upon Plaintiffs' Motion for Partial Summary Judgment and Memorandum in Support (the "Motion"). *Doc. 8*. Having reviewed the Motion and the attendant briefing, *docs. 23*, *25*, *39*, having conducted a hearing on the Motion, *see doc. 40*, and being otherwise fully advised, the Court will DENY Plaintiffs' Motion.

    I.      **BACKGROUND**

Plaintiffs are two companies, one of which owns real property in southern New Mexico. *See doc. 1-1* at 1. After attempting unsuccessfully for several months to obtain the necessary Business Registration from Doña Ana County, New Mexico to start a hotel business on the property, Plaintiffs brought due process and takings claims in state court on September 30, 2022. *See id.* On November 4, 2022, Defendant removed

1

Plaintiffs' claims to federal court. *Doc. 1.*

On December 13, 2022, Plaintiffs filed the instant Motion for Partial Summary Judgment and Memorandum in Support. *Doc. 8.* Defendant responded on January 17, 2023. *Doc. 23.* After Plaintiffs filed their reply on February 3, 2023, *doc. 25*, Defendant filed an opposed motion for a surreply, *doc. 27*, which the Court granted, *doc. 36*. Briefing on the Motion was complete with the filing of Defendant's surreply on March 13, 2023. *Doc. 39.* On March 23, 2023, the Court held a hearing on the Motion. *See doc. 40.*

## II.   UNDISPUTED MATERIAL FACTS

Based on the record before it, the Court finds the following material facts to be undisputed for the purposes of this motion.[1]

1. Plaintiffs own the real property assigned parcel account no. 40300482 by the Doña Ana County Assessor ("the Property") in Doña Ana County ("the County"). Plaintiffs' Undisputed Material Fact ("PUMF") 1; Defendant's Undisputed Material Fact ("DUMF") 1.

2. The Property is physically connected to County Road D061 via an unnamed road, identified by the parties as "the Property Access." PUMF 2.

---

[1] Where the Court cites exclusively to one of Plaintiffs' UMFs, it does so pursuant to Rule 56(e)(2), because the UMF in question was not specifically disputed in Defendants' Response. *See* Fed. R. Civ. P. 56(e)(2). Where the Court cites to evidence in the record, it does so pursuant to Rule 56(c)(3), which permits consideration of "other materials in the record." Fed. R. Civ. P. 56(c)(3).

3. The Property Access crosses over property owned by Plaintiffs, property owned by BNSF Railway ("BNSF"), and property owned by a third party, Selden Springs Properties, LLC ("Selden Springs").  PUMF 2; DUMF 2; *doc. 23-1* at 33.

4. In 1914, BNSF and the State Highway Commission of New Mexico entered into an agreement ("the 1914 agreement") in which BNSF granted the Commission a permit and license to "construct, install and maintain, a Graded Road upon [BNSF's] property and crossing under its main line of railroad." *Doc. 8* at 11. The 1914 agreement required the Commission to "keep said Road in such good condition and repair that it will not endanger or interfere in any manner" with BNSF's property or the operation of the railroad. *Id.* at 12.

5. In 2020, Plaintiffs took steps to apply for a Business Registration from the County so that Plaintiffs could operate a hotel on the Property. *Doc. 23-1* at 29-32.

6. On September 28, 2021, the County notified Plaintiffs that a "Business Registration to operate a Hotel or Bed and Breakfast would not be issued until several items were addressed and corrected" including "permission from BNSF to access the [P]roperty through the trestle"[2] and "a viable solution for emergency access to the [P]roperty." *Doc. 8* at 16.

7. The County alleges that the Property is out of compliance with several County codes including Section 195-3(J)(2), which requires that the Property be accessible

---

[2] The trestle is the portion of the Property Access that is owned and controlled by BNSF.  PUMF 2

to fire department apparatus, and Section 350-602(B)(1), which requires that Plaintiffs prove that they have an ability to legally access and use the entirety of the Property Access. *Doc. 23-1* at ¶¶ 16-18; *see* Doña Ana County Code § 195-3(J)(2) and § 350-602(B)(1) (2016).

### III.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense – or part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the movant meets this burden, the non-moving party is required to designate specific facts showing that "there are . . . genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also Celotex*, 477 U.S. at 324.

In applying this standard, the Court must draw all "reasonable inferences" in the light most favorable to the non-moving party. *Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998) (citation omitted). Summary judgment is

appropriate only "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id*. (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

IV. **ANALYSIS**

### A. Overview of Plaintiffs' Claims and Instant Motion

Plaintiffs' Complaint raises two claims – a violation of "its due process rights" and a "regulatory taking." *Doc. 1-1* at 4. In the past and in the briefing here, these claims are often ill-defined and sometimes conflated. For clarity, the Court will summarize its understanding of the framework of such claims in the instant context.

A "regulatory taking" claim arises out of the Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, which provides "nor shall private property be taken for public use, without just compensation." *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1007 (1992); U.S. Const. amend. V. Such a claim asserts that a government regulation has improperly deprived a property owner of some or all of their property. *See Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005). A government regulation of property is considered a taking when the regulation is "so onerous that its effect is tantamount to a direct appropriation or ouster." *Id*. Regulatory actions are classified as per se takings if they (1) "require an owner to suffer a permanent physical invasion" of their property; or (2) "completely deprive an owner of all economically beneficial use" of the property. *North*

5

*Mill Street, LLC v. City of Aspen*, 6 F.4th 1216, 1224 (10th Cir. 2021) (citing *Lingle*, 544 U.S. at 538). If the regulatory action does not fall into one of those categories, the Court must assess a "complex of factors" to determine whether the action is a taking. *Murr v. Wisconsin*, 137 S. Ct. 1933, 1943 (2017). Known as the *Penn Central* factors, these include "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." *Id*. (citing *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978)).[3] Thus, regulatory action claims focus on the regulation rather than their application.

On the other hand, a due process claim related to a regulatory action arises out of the Fourteenth Amendment's prohibition against the government "depriv[ing] any person of life, liberty, or property, without due process of law." *Martin Marietta Materials, Inc. v. Kansas Dep't of Transp*., 810 F.3d 1161, 1171-72 (10th Cir. 2016); U.S. Const. amend. XIV, § 1. In its most straightforward version – procedural due process – the court must ask (1) did the plaintiff possess a protected property or liberty interest to which due process protections apply? And if so, (2) was the plaintiff afforded an appropriate level of process?" *Martin*, 810 F.3d at 1172. Even if sufficient process is afforded, an "arbitrary deprivation of a property right may violate the substantive

---

[3] Not relevant here, a regulatory taking claim can also be premised on a land-use exaction. See *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 546 (2005) (citing *Nollan v. California Coastal Comm'n*, 483 U.S. 825 (1987) and *Dolan v. City of Tigard*, 512 U.S. 374 (1994)).

6

component of the Due Process Clause if the arbitrariness is extreme." *Klen v. City of Loveland*, 661 F.3d 498, 512-13 (10th Cir. 2011). Thus, due process claims in the regulatory context focus on the application of a regulation to an individual or situation.

As noted above, in a motion for summary judgment, the moving party must "identify[] each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Unfortunately, it is not clear at which claim, or part thereof, Plaintiffs' motion is directed. *See generally docs. 8, 25*. Plaintiffs makes two discernable and seemingly distinct arguments. First, their Motion and Reply ask the Court to determine whether the County "has the right to condition use of the Property on changes to the Property Access." Given its focus on the authority of the regulation, this question appears to relate to Plaintiffs' takings claim. *Doc. 8* at 1; *see also id.* at 5 (Plaintiffs citing New Mexico state case law involving takings issues); *doc. 25* at 5 (Plaintiffs stating that "the central dispute" of the lawsuit is whether "Doña Ana County ha[s] the authority to pre-condition all uses of the Property on improvements to the Property Access"). Second, Plaintiffs repeatedly argue in their briefing and at oral argument that the Court should find that the record establishes lawful public access across the entirety of the Property Access. Given its relevance only to the application of the regulation, this issue appears to relate to Plaintiffs' due process claim. *See doc. 8* at 3-4; *doc. 25* at 7-9 ("The legal question about Plaintiffs' right to rely on the Property Access, without improvements . . . is ripe.").

In any event, at oral argument, Plaintiffs' counsel's argument was more focused on Plaintiffs' due process claim. In particular, Plaintiffs' counsel argued that (1) the entire Property Access is a road over which the public is lawfully permitted to traverse; and (2) if the Court made such a finding, it would undermine Defendant's basis for denying its Business Registration. *Doc. 40* at 3. Nonetheless, the Court will review Plaintiffs' motion as if it is seeking partial summary judgment under both its claims.

### B. Plaintiffs Are Not Entitled to Partial Summary Judgment on their Regulatory Taking Claim

Even assuming the public is lawfully permitted to traverse the entire Property Access, Plaintiffs' regulatory taking claim would not be advanced. There are two regulations which are relevant to the denial of Plaintiffs' Business Registration – (1) the requirement that the public have lawful access from a public road to the proposed place of business; and (2) the requirement that emergency vehicles be able to access the proposed business. *Doc. 23-1* at ¶¶ 16-18; *see* Doña Ana County Code § 195-3(J)(2) and § 350-602(B)(1) (2016). These regulations do not require any permanent physical invasion. There is no evidence that they completely deprive Plaintiffs of all economically beneficial use of the property.[4] Thus, the regulations themselves are not *per se* takings. Under the *Penn Central* factors, these regulations, which are routine

---

[4] While the Court understands that the cessation of electrical service would dramatically diminish economically beneficial use of the property, Plaintiffs concede that such cessation was permissible based on Plaintiffs' unlicensed activity on the property. *Doc. 8* at 19.

8

regulatory requirements in place when Plaintiffs purchased the property, would likely be upheld. *See Penn Cent. Transp. Co.*, 438 U.S. at 125 (collecting cases showing courts frequently uphold regulations that promote "health, safety, morals, or general welfare" even if those regulations "destroy[] or adversely affect[] recognized real property interests"). Indeed, at oral argument, Plaintiffs' counsel conceded that counties are permitted to enforce such safety regulations. *See doc. 40* at 2-3.

Even assuming that Defendant should have accepted Plaintiffs' submissions as sufficient evidence to satisfy the public access regulation, that conclusion would not advance Plaintiffs' regulatory takings claim. First, Plaintiffs have provided no evidence that Defendant could not have denied the Business Registration under the emergency vehicle access regulation. Second, and more fundamentally, Defendant's refusal to accept Plaintiffs' evidence of public access would not transform the regulation itself into a taking. Instead, it would be reviewed to determine if Plaintiffs received due process for that denial. Either way, Plaintiffs' arguments in the instant Motion do not justify a partial summary judgment on its regulatory taking claim.

Thus, to the extent that Plaintiffs' Motion seeks partial summary judgment on its regulatory taking claim, it is DENIED.

### C. Plaintiffs are not Entitled to Partial Summary Judgment on their Due Process Claim

Plaintiffs' arguments that they have adequately established lawful public access across the Property Access is far more relevant to their due process claim. Plaintiffs

9

seek an answer to this legal question because the County is withholding a Building Registration permit from Plaintiffs in part because it does not agree that Plaintiffs have established that they and the public can traverse the Property Access.  UMF 7; *see also doc. 8* at 16; *doc. 23* at ¶ 3.  Prevailing on this point is a necessary, although not sufficient, condition for Plaintiffs to show that the County violated Plaintiffs' due process rights by withholding the permit.

      Regardless of whether a finding of lawful public access is important to Plaintiffs' due process claim, it is unclear whether partial summary judgment on this issue is permissible under Rule 56.  As quoted above, "a party may move for summary judgment, identifying each claim or defense – or part of each claim or defense – on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  Rule 56 does not define the term "part" or explain the smallest "part" of a claim on which summary judgment could be granted.  Some courts have held that a partial summary judgment motion on a "part" of a claim is appropriate only when a ruling would result in a judgment.  *See, e.g., Cardenas v. Kanco Hay, LLC*, 2016 WL 3881345, at *7 (D. Kan. July 18, 2016).  Nonetheless, it appears that this circuit permits such motions when they resolve an element or elements of a claim.  *See, e.g., Harrison v. Eddy Potash, Inc.*, 248 F.3d 1014, 1023 (10th Cir. 2001).   Whether a partial summary judgment could be granted under Rule 56 on an "issue" which does not constitute an element is more questionable.  *See, e.g., Hawkinson v. Montoya*, 2007 WL 776674, at *2 (D. Colo. Mar. 12, 2007).  This Court need

not take a position on that question because, as explained below, Plaintiffs' motion and the record is insufficient to resolve any "issue" as a matter of law.

i.     *1914 Agreement Standing Alone*

The issue of whether there is legal public access to Plaintiffs' property must address that fact that the purported access from the closest undeniably public road crosses two pieces of private property. One of those pieces of property belongs to the BNSF Railroad. The portion of the Property Access which crosses the railroad property was constructed in accordance with a 1914 agreement between the State Highway Commission and the predecessor railroad company. In their Motion, Plaintiffs argue that the 1914 agreement "explicitly establishes [that road][5] is a public road." *Doc. 8 at 4*. Plaintiffs do not explain this point further and simply cite to the agreement and the state statute addressing tort liability if a road is in fact public. Unfortunately, these authorities are insufficient. The agreement does not "explicitly" say anything about the public nature of the road and the tort immunity statute adds nothing to the question of what establishes a public road. Given that roads built by and required to be maintained by the government would typically meet the definition of a public road, Plaintiff may be correct. *See* N.M. Stat. Ann. § 67-2-1 (2018). However, without further support for

---

[5] In their Motion, Plaintiffs actually assert that the 1914 agreement makes the entire Property Access a public road. *See* doc. 8 at 4. As the agreement appears to be limited to the portion that crosses the railroad property, the Court cannot agree that the agreement, standing alone, could establish that fact as a matter of law.

11

this conclusion, the Court cannot make it at this time.

In their reply, Plaintiffs modify their argument by claiming that the entire Property Access is subject to a "public prescriptive easement." *Doc. 25* at 2, 7. If correct, this argument would establish public access across both properties traversed by the Property Access.

ii.   *Prescriptive Easement*

Plaintiffs have not shown that any portion of the Property Access is subject to a prescriptive easement. Under New Mexico law, a prescriptive easement "is created by an adverse use of land, that is open or notorious, and continued without effective interruption for the prescriptive period (of ten years)." *Algermissen v. Sutin*, 61 P.3d 176, 180 (N.M. 2002). In order to show that the Property Access has been in use by the public for the prescriptive period, Plaintiffs first point to a letter from the County to Plaintiffs dated September 28, 2021, which describes the zoning status of the Property. *Doc. 25* at 2. The letter simply states, however, that the Property is zoned as "T2 (Rural)," that hotels are typically not permitted in this type of zoning district, but that the County would permit a hotel on the Property as a "legal nonconforming use" as long as Plaintiffs complied with a variety of other County codes. *Doc. 8* at 16. Nothing in this letter discusses the Property Access, let alone provides evidence that the Property Access has been used by the public in an open and notorious manner for at least ten uninterrupted years.

During the motion hearing on March 23, 2023, Plaintiffs argued that the Court should find that the Property Access is subject to a public prescriptive easement because there was allegedly a women's prison on the Property and thus the state must have used the Property Access for some period of time. *See doc. 40 at 3.* This argument fails for two reasons. First, Plaintiffs neglected to raise it in the body of their Motion or reply. The only place that this issue is raised is in Plaintiff's "Tort Claims Act Notice" (the "Notice") which is attached as Exhibit 4 to Plaintiffs' motion. *See doc. 8 at 19.* Second, the record contains no evidence of the existence of a women's prison beyond a conclusory statement by Plaintiffs' counsel in the Notice that, in the 1970s, the Property "was leased by the State of New Mexico and operated as a women's prison."[6] *Id.* Third, even ignoring those deficiencies, there is nothing to demonstrate the time period over which the prison was operated, and whether it indeed utilized the Property Access for public traffic.

Finally, Plaintiffs identify the 1914 agreement between BNSF Railway and the State Highway Commission of New Mexico as evidence that the Property Access is

---

[6] At the motion hearing, Plaintiffs argued that the use of the Property as a women's prison is public knowledge which is readily discoverable through a basic Internet search, and they requested that the Court take judicial notice of this fact. The Court's internet search, however, revealed only a tourism website which contained an unsubstantiated statement that the Property was used previously as a women's prison and an article in which Plaintiffs' registered agent states in an interview that the hotel building had prison doors in each room when he purchased the Property. While the Court's internet search skills may be to blame, this circumstantial evidence is insufficient for the Court to take judicial notice of the existence of a women's prison. *See Estate of Lockett v. Fallin*, 841 F.3d 1098, 1111 (10th Cir. 2016) ("[C]ourts may take judicial notice of a fact 'that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'") (citation omitted).

13

subject to a public prescriptive easement, *see* Doc. 25 at 2, 7. While Plaintiffs do not make such an argument, the agreement could establish an express easement. *Martinez v. Martinez*, 604 P.2d 366, 368 (N.M. 1979) (holding that an express easement was created through language in a deed "which clearly show[ed] intention to grant an easement"). However, the agreement could only grant an express easement on the portion of the Property Access that crosses BNSF property and not the portion that crosses the Selden Springs property. With respect to a finding of a public prescriptive easement, the fact that the State desired a road across both properties, and in fact constructed one, is evidence of at least the State's *intent* to use the Property Access. Beyond that, the agreement provides no evidence that the road was used by the public in a sufficient manner to create a public prescriptive easement.

    iii.    *Selden Easement*

The Court now turns to address the portion of the Property Access which crosses the property owned by Selden Springs LLC. In their reply, Plaintiffs attach as an exhibit a purported grant of easement from Selden Springs to Doña Ana County (the "Selden Easement"), and they argue that the Selden Easement made the portion of the Property Access that crosses the Selden Springs property into a public road. *Doc. 25* at 7-8, 11-15. As noted by Defendant, however, a road does not become public in New Mexico until the owner(s) of the road presents a petition to the Board of County Commissioners to make the road public, and the Board "declare[s] the same a public highway." N.M. Stat.

14

Ann. § 67-5-20 (1978). The Selden Easement was never presented to the Board of County Commissioners for Doña Ana County, and County officials were allegedly unaware of the existence of the Selden Easement. *Doc. 39* at 4-5, 8-9. As a result, the Court cannot find as a matter of law that the Selden Easement made the portion of the Property Access that crosses the Selden Springs property into a public road.

    *iv.*    *Conclusion Regarding Property Access Issue*

Plaintiffs have failed to establish as a matter of law the existence of legal public access across the entire Property Access from County Road D061 to their property. The 1914 agreement may establish a public road over the BNSF property. The easement across the Selden Springs LLC property may be easily modified to permit sufficient public ingress and egress. However, as currently presented and briefed, the Court cannot grant partial summary judgment on this issue.

**V.**    **CONCLUSION**

For the foregoing reasons, the Court DENIES Plaintiffs' Partial Motion for Summary Judgment. *Doc. 8*.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**